UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No. 1:16-cv-2005 (WRL)

| | |
|---|---|
| SHIQIU CHEN and CHANGREN ZOU, | |
| Plaintiffs, | |
| -against- | |
| H.B. RESTAURANT GROUP, INC. d/b/a Hunan Balcony, J&K RESTAURANT GROUP, INC. d/b/a Szechuan Gourmet d/b/a Szechuan Garden, and JENNY SHUCHEN WU, el al | |
| Defendants. | |

**DEFENDANTS' REPLY TO
PLAINTIFFS' PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

Defendants H.B. Restaurant Group, Inc. (hereinafter "H.B.."), J&K Restaurant Group, Inc. (Hereinafter "J&K"), and their owner Jenny Shuchen Wu (hereinafter "Wu") (collectively, "Defendants"), by their undersigned attorney hereby submit the following in response to Plaintiffs' proposed findings of fact and conclusions of law:

Defendants do not take issue with plaintiffs' recital of the applicable laws under the FLSA and NYLL. Neither do we dispute that if the facts were as plaintiffs' allege, then the said laws would be applicable to the defendants as argued. However, we dispute that the facts are as set forth in plaintiffs' post-trial submission to the Court.

At the core of plaintiff's case is the attempt to make a case for joint liability. Under our labor laws, a joint enterprise is not only subject to shared liability, it is also a profitable proposition insured by parlaying the responsibilities. Plaintiffs have attempted to connect dots to make the case for joint liability, where no proper connection of these dots exists.

This effort is evident in the sometimes-contradictory testimony of the plaintiffs that their manager was one "Ah Pao," but Jenny Wu would always be included in any recital of who their managers were. This, despite the fact that the plaintiffs claimed to have worked simultaneously at locations for Ms. Wu, even before or after the evidence showed that she had been there.

At points in Plaintiff Chen's deposition on December 7, 2017 – which he testified at trial he did not remember, at least on cross-examination – he stated unequivocally that he was never

paid by a woman at his regular employment at New Saigon. Deposition 12/7/17, 12:4-7; 11:3-14. This prior inconsistent statement contradicted his sworn testimony at trial.

Plaintiff's conclusory averments are just that: conclusory statements which do not follow from the facts in evidence. Counsel now argues that unproven premises follow to the unsound conclusion that the defendants violated labor laws, because, they argue, the plaintiffs say so. They say so under oath in the face of evidence to the contrary. Plaintiffs here propose that the Court, as fact-finder, adopt misleading premises, leading to unsound conclusions of law.

It is insufficient to establish the joint liability alleged here, by merely mentioning names in a conclusory sentence; begging the question, as though the premises are established; and then to cement it through witnesses who can't keep their stories straight. My clients are being sued for hundreds of thousands of dollars, on the basis of these allegations. Allegations that are woefully bereft of credible evidence as a matter of fact; moreover, allegations that, as a matter of law, do not make out an actionable claim.

Who is the predator here? The question is whether my client employer unlawfully exploited the plaintiffs in violation of the labor laws, or whether the plaintiffs are seeking to exploit the labor laws to falsely accuse the defendants. (See, Portal-to-Portal Act).

I will address specifically the plaintiffs' submission.

## AS TO PLAINTIFFS' INTRODUCTION:

1-5.    Plaintiffs accept plaintiffs' introductory procedural background of the case, and leave to the Court to decide articulations of law under paragraphs "1" through "5" of their submission.

6.      Paragraph "6" of Plaintiffs' submission is an example of unsound conclusory statements, to wit, that the defendants violated the FLSA and NYLL through knowing, intentional, willful conduct, etc., begging the question that this is so because the cited laws prohibit the conduct alleged. It is not the case that, as paragraph "6" states, "Plaintiffs established that Defendants violated the FLSA and NYLL." No such violation was ever "established" against the defendants. Such conclusion is in fact contradicted by the evidence.

**AS TO PLAINTIFFS' PROPOSED FINDINGS OF FACT:**

7.    Defendants admit that plaintiff Changren Zou was employed as a takeout delivery person at Hunan Balcony located at 2596 Broadway, NYC (the "Broadway location") from on or about July 2012 to about December 2012. (Plaintiffs' submission, p.2 ¶7)[1] Defendant Wu through defendant H.B. did operate such a restaurant at that location around that time.

8.    Plaintiff says he was employed by A New Saigon Restaurant at the Broadway location from around November 2014 through April 2016.

9.    Defendants deny the allegation under paragraph "9" of plaintiffs' submission, that "during his term of employment at Hunan Balcony from July 2012 through December 2012, Plaintiff Changren Zou was also required to work off the books three or four days out of each week" at a restaurant located at 239 W. 105th Street, NYC" ("105th Street location"). This latter restaurant was not operating yet, as shown by the leases in evidence.

10.   Defendants deny the allegations under paragraph "10" that during plaintiff  Zou's employment at New Saigon at the Broadway location, he worked off the books three or four days a week at the 105 Street location. This was not established by any credible evidence; in fact, plaintiffs' testimonial evidence regarding this was unlikely and often contradictory.

11.   There is no dispute that plaintiff Zou worked on his day off for Ms. Wu, for which his time was documented and compensated. Paragraph 11 contradicts this testimony.

12.   Defendants do not dispute that plaintiff Chen was employed by New Saigon Restaurant at the Broadway location after defendant Wu had left that location.

13.   Defendants deny the allegations under paragraph "13." Defendants maintain that plaintiff Chen did not work for defendants, and that his allegation related thereto constitute perjury.

14.   There is no dispute that H.B. operated a restaurant called "Hunan Balcony" at the Broadway location prior to surrendering the lease and moving to the 105 Street location.

15.   Upon information and belief, Defendant S G 98 operated a restaurant called "A New Saigon" at the Broadway location after defendant Wu had left.

16.   J & K did operate a restaurant called "Pitaya" at the 105 Street location, and changed names to "Szechuan Gourmet" and "Szechuan Garden" as alleged.

---

[1] References to Plaintiffs' Proposed Findings of Fact and Conclusions of Law (DE 129), hereinafter abbreviated as "Pl Sub."

17.     Defendant Jenny Shuchen Wu was an owner of H.B. Restaurant Group, Inc. d/b/a Hunan Balcony. However, she was not a manager of this restaurant during all times relevant to this lawsuit as alleged in Pl. Sub. Par. 17. She was certainly not a manager at "A New Saigon" at any time, plaintiffs' perjured testimony notwithstanding. By the evidence, it is non-sensical that this is so. Going back to that location at the new restaurant for lunch does not make it so. This paragraph is illustrative of the attempt to create a legal joint enterprise where the evidence does not establish such legal connection. Plaintiff may be given deference to his recollection in the absence of defendant employer's reasonable rebuttal, but the plaintiff may not be thereby given *carte blanche* for perjury. The citations to the transcript, incorrect or mis-cited in places as they are, leave us with the conclusion that the plaintiffs did testify to that, and that is all.

18.     The hearsay-based, unfounded allegations of paragraph "18", supported as they are by the plaintiffs' perjured testimony, are contradicted by the documentary evidence.

19.     Again, joining names in a conclusory sentence does not a joint enterprise make, for purposes of joint liability under the FLSA or NYLL.  If plaintiffs wish to go after Zun Bi Chen and whomever else had lunch or ever shared a common location at different times with Ms. Wu, they may do so. But the evidence adduced at trial does not support their conclusion of joint liability as a matter of law.

20.     Plaintiff Zou mentioned one "Ah Pao" as the manager.

21.     It is undisputed that defendant Wu was the manager at Hunan Balcony, at the Broadway location prior to G98, New Saigon et al started doing business there. Plaintiffs' name-dropping, and joining them together in the middle of legal language do not change the facts. It is good for the plaintiffs if New Saigon and the other restaurants were in bed together. But the fact is that they were not. On the evidence and reasonable explanation, defendant Wu surrendered her lease and moved. She swore she had nothing else to do with the new business. She denies sharing employees as plaintiffs allege. By his own admission, plaintiff Zou was a New Saigon employee, who put in some hours at Wu's restaurant on his days off. She documented this. As to Plaintiff Chen, she maintains that his testimony was a pure fabrication.

22.     The allegations under par. 22 are meant to puff up the plaintiff's purported aim, but add nothing to answering the question whether defendant Wu is liable as alleged. These plaintiffs are poster children for the sort of predatory, process-opportunistic actions against which the courts should be vigilant, and about which Congress cautioned in its Portal-to-Portal Act.

4

23.     Plaintiff Zou drove his motorcycle making deliveries. That he used the motorcycle for making money delivering for different restaurants does not answer the joint liability question. It's bad enough that plaintiff Zou (Chen never worked for Ms. Wu) demands money from Ms. Wu for the use of his motorcycle on his day off delivering for her; in addition, plaintiffs (one real part-timer and one with no evidence of having worked for Ms. Wu), also seek compensation from Ms. Wu for their use of their motorcycles for their employer New Saigon as well. It may be a lucrative way to parlay an increased recovery for the plaintiffs, but the evidence simply does not support plaintiffs' *prima facie* case against Ms. Wu and her restaurants. If "New Saigon" or "SG98" and/or others are liable for unpaid wages to plaintiffs, then Ms. Wu and her companies are not participants in that.

I.      **THE ISSUES**

        There are two issues in this case:

        A.      Whether an employer-employee relationship existed between Defendants Wu, H.B. and/or J & K and the plaintiffs.

        1.      As to Plaintiff Zou, he worked during his day off from New Saigon. He was paid for this part-time work.

        2.      As to Plaintiff Chen, such a relationship did not exist. Whereas Ms. Wu kept careful records of employees' wages and hours, no such records could be found for Chen.

        B.      Whether Defendants are jointly liable with SG98 and A New Saigon.

        1.      The evidence showed that these entities were not a joint enterprise with Defendants H.B. and J & K.

        2.      Introduced into evidence were two leases. One was between 220 W 98 Realty LLC (Landlord) and H.B. Restaurant Group Inc. (Tenant), dated July 21, 2009 Such lease was assigned and assumed pursuant to an assignment and assumption of Lease dated May 20, 2009 by and between Wah-Nan Restaurant Corp dba Hunan Balcony Restaurant as assignor and H.B. Restaurant Group Inc as Assignee. The other lease was between 47 East 34th Street LLC and J & K Restaurant Group Inc., dated January 15, 2013.  Both were executed by Jenny Wu. The H.B. lease was for a location at 220 West 98th Street, NY 10028 (the Broadway location).

5

Wu testified that the overhead was too high at that location, and so she moved to another location at 105 Street, near the Broadway location.  Ms. Wu testified that after she moved, she went to the new restaurant A New Saigon as a paying customer on occasion.  Other than this, she had nothing to do with the restaurant(s) at the Broadway location.

## II.    THE FACTS

Defendant Wu started operating a restaurant at the 98th Street-Broadway location on or about June 1, 2009. TR 252:18-23. She remained as owner of the restaurant at that location until 2014. TR 255:6-11. H.B. acquired the restaurant at the Broadway location from one Wah Nan Restaurant Corporation. H.B. continued using some of the kitchen equipment already there. H.B. did business as "Hunan Balcony." TR 261:5-12.

Defendant Wu surrendered her lease to one Kevin Chen, who made his own arrangements with the landlord. TR 262:11-25. She testified that she did not enter into any contract of sale of the business apart from the assignment of the lease. TR 264:15-18. After she left, the new owners changed the equipment, which was old. TR 264:19-25.

Defendant moved to the 105 Street location and operated as J & K, under the restaurant name "Pitaya" from July 2013 until February 2014. She changed the name of the restaurant to "Szechuan Gourmet." TR 266:3-13. The 105th Street location operated continuously, with the name of the restaurant changing. It became "Szechuan Garden" on or about March 11, 2015. TR 266:14-23.

At the 105th Street location, it was the practice that employees punched in and out. She also testified to this at her deposition. TR 284:1-17. While managing Szechuan Garden, Defendant Wu was not aware that any workers from New Saigon came to work with her. TR 285:5-8. There was no agreement with anyone from SG 98 about sharing deliverymen. She did not directly hire employees; her manager Vinnie took care of that. TR 285:19-24. She testified that anybody from anywhere working part-time for J & K were paid on the books. TR 289:10-11. It was up to the person looking for part-time work to decide how many days they wanted to work. TR 289:1-5.

Plaintiff Zou testified that he was familiar with Hunan Balcony and New Saigon Restaurants, located at different times at 256 Broadway. TR 6:14-24. He was also familiar with the restaurant named Szechuan Garden, located at 105th Street. TR 6:25 – 7:1-4. He performed work for Hunan Balcony, making deliveries, from July 2012 until December 2012. TR 7:15-21.

He testified that he was hired by one Ah Pao to work 6 days per week. TR 8:4-20. Ah Pao handled all aspects of plaintiff's employment, including payments and work hours. TR 9:1-4; 10:16-17. He then went on to say that while working at Hunan Balcony, Defendant Wu was in charge of everything. TR 1:1-3. After testifying that Ah Pao was in charge of his employment, he went on to testify that Jenny Wu paid his salary, which she handed out. TR 11:6-20.

Plaintiff Zou testified that, between July through December 2012, when the 105th Street restaurant was busy, Defendant Wu would tell him to go there and help out with deliveries. TR 11:6-20. This is contrary to the evidence that the 105th Street restaurant did not start operating under Wu's management until 2013, as shown by the lease. In his deposition on 12/7/2017, the plaintiff was asked who his boss was at Hunan Balcony. He said it was one Zun Bi Chen (12:3-4). At trial, he made sure to say that it was Defendant Wu who paid him. (TR 15:8-9). At Hunan Balcony, plaintiff Zou said that defendant Wu would give him a piece of paper to sign, which she kept. He said he did not look at what he was signing. TR 15:10-18. He stopped working at Huna Balcony in December 2012 due to "some health issue." TR 17:17-18. He said that during the period of July through December 2012, he occasionally performed work at the 105th Street location. TR 18:22-25. This contradicts the fact that the 105th Street restaurant did not yet exist.

Plaintiff Zou testified that he did not return to the 98th Street location after December 2012. In April, 2013, he worked for about a month at the 105th Street location. TR 21:5-18. While working at Szechuan Garden in 2013, he was paid bi-weekly. He signed a statement when he received his checks. TR 27:5-9. He denied knowing what he was signing. TR 27:10-15. Plaintiff started working for New Saigon in November 2014, [after defendant Wu had left that location to her new location at 105th Street]. TR 29:10-11; TR 30:6-7.

While at New Saigon, plaintiff Zou said his boss was Zun Bi Chen, who would give him orders. TR 31:7-17. But he testified that it was defendant Wu who was responsible for managing and paying salaries. According to Zou, defendant Wu came every day to do the final accounting. TR 32:2-7. While managing the wait staff, the kitchen, giving out salary at Szechuan Garden as previously testified, defendant Wu now is said to "manage the wait staff, the kitchen give out the salary" at New Saigon. TR 33:1-4. Of course, Zou testified that defendant Wu was at the forefront of his supervision at New Saigon. TR 36:1-2. He said he left New Saigon because it eventually closed. TR 40:11-12. He then testified that from 2014 to 2016, he did not go to the

105th Street restaurant; but sometimes defendant Wu and Ah Pao would tell him to go to Szechuan Garden to help out when they were busy. TR 42:3-8.

Plaintiff Zou acknowledged his signature on the document he received when payment was distributed; but that he did not pay attention to the other information on the form. TR 43:9-24; TR 44:5-6.

Contrary to his previous testimony, he now claimed that he first performed work for Szechuan Garden from 2014 until November 20, 2016. TR 44:14-21. He then testified that he forgot when the arrangement of working one day a week at Szechuan Garden ended. "Well, 2015 I was working at New Saigon, but I did go up there when I was free at New Saigon." TR 46:11-23. On his day off at New Saigon, he would go to Szechuan Garden. TR 47:11-16. At nauseam, he testified that he worked 6 days a week for New Saigon, and he worked on his day off over at 105th Street under defendant Wu's supervision, for which he was paid separately.

Although he had no lapse in memory during direct examination, he was evasive on cross-examination. He denied having been deposed on December 7, 2017; he said he did not even remember examining counsel, despite a deposition that lasted many hours. TR 52:6-8; 16-22; 53:2-6. At his deposition, p. 8, line 9, he said that he was not interviewed when hired at New Saigon. He said that "they already knew me. I was a delivery of foods for other restaurants down the street, on the street." TR 61:7-16. This is inconsistent with his testimony that he did not work at any other restaurants during that time. TR 62:1-7. At page 8, line 17 of his deposition, he was asked whether he spoke with anyone at New Saigon concerning his wages and hours. He said that he was informed about these things TR 63:4-6. His answer at trial: "I don't remember. I really don't remember. I don't think I said that." TR 63:8-9. In the complaint, at p. 10, par. 58, it is alleged that plaintiff was not informed of his hourly pay rate. TR 71:3-7. He went on to confirm that he worked at Szechuan Garden one day a week, on his day off. TR 73:14-17; 77:24-25 – 78:1-6. He deposited the checks in his bank. TR 73:23-25; 74:1-8. Contrary to his testimony that it was defendant Wu who would call him and order him to go to her restaurant on 105 Street, he then changed his story and said that it was Ah Pao who did this. TR 80:15-16; TR 95:1-8. Asked why he would get a separate wage statement at the 105 Street restaurant, when his employer was New Saigon, he said he did not know. All he knew is that it was defendant Wu who paid him for the one day that he went to 105 Street to help out. TR 82:10-12.

Plaintiff CHEN testified that he worked at New Saigon restaurant. TR 115:19-22. He was hired by one Gui Lin. TR 116:6-14. He said that defendant Wu was present at New Saigon "two, three, or four times a day – I mean, sorry, a week. Almost every day but maybe just come in ..." TR 119:2-8. His bosses at New Saigon were Ah Pao, Lin Gu, mainly Ah Pao, and also boss Zun Bi Chen. Of course, he had to include defendant Wu in the list. He said he would go during lunchtime sometimes to help out at 105 Street. He said that the manager would take whoever is free to help out. TR 128:1-2. He was paid by New Saigon. TR 129:5-9; 12-16. At New Saigon, he said it was defendant Wu who paid him. TR 130:7-8.

However, there is no indication that anyone other than Chen or Zou went to 105 Street. It was always them.

Upon information and belief, received close to the trial date, plaintiff Chen was in fact a part-owner of New Saigon. A witness came forward, presented himself at Court on day 1 of trial, to testify that Mr. Chen was in fact an investor, and that the reason why he brought this lawsuit was because he lost his investment. A deposition was scheduled of this witness. However, as reported to the Court, someone acting on behalf of Mr. Chen intimidated him into not showing up for the deposition or to testify at trial.

Except for plaintiff Zou, who did go over to work part-time one day a week for a month at 105 Street, there was nobody else doing this from New Saigon TR 16:24-25 – 17:1-4. When Ms. Wu's 105 Street restaurant hired Mr. Zou as indicated, she did not know whether he came from SG 98 or some other restaurant. "Mr. Zou came on his own," she said, "and inquired of the manager, Vinnie, whether there was part-time work. TR 24:1-6.

Other than from what others have told her, defendant Wu had no knowledge of who exactly owned New Saigon. TR 36:13-16.

## III.    CONCLUSION

Plaintiffs' case is founded on the often contradictory and dubious testimony of the two plaintiffs. Nobody was brought in by subpoena or otherwise to corroborate their claims, particularly with regard to plaintiffs' alleged work at the different restaurants, under one common management. While plaintiff Zou was an employee of both New Saigon and Szechuan Garden at some point, under the circumstances adduced at trial, there is no credible evidence that

plaintiff Chen ever worked for defendant Wu or her companies. It is noteworthy that no record of his work at 105 Street was produced, despite the fact that Ms. Wu kept records for even a one-day part-timer such as Mr. Zou.

Within the meaning of the FLSA and NYLL, plaintiff Zou was an employee of defendant Wu. Plaintiff Chen was not.

The evidence at trial clearly showed that the alleged intermingling of the different entities was simply not so. The truth is not difficult. The complexity, contradictions and obfuscations emerge as a result of the attempt to create the windfall of joint liability. The totality of facts established simply that: (a) there were different restaurants that operated at distinct time periods at different locations; (b) defendant Jenny Wu ran a restaurant at the Broadway location, but then decided to surrender the lease and move to a more economically viable location; (c) new owners ran a restaurant, or restaurants at the Broadway location, notably A New Saigon, after defendant Wu left; (d) defendant Wu did not continue any links with the restaurant at her old location, nor did she have any reason to do so; (e) plaintiff Zou worked one day per week for about a month for Ms. Wu at her new location, which was documented; and (f) there was no evidence, other than plaintiff Chen's dubious testimony, that he ever worked at any time for Ms. Wu.

Although defendant Wu testified that she did visit New Saigon after they started business as a paying customer a couple of times, this is insufficient to establish a legal nexus to make defendants Wu, H.B. and/or J & K jointly liable for any employer-employee relations with regard to the plaintiffs.


Therefore, the case against defendants Wu, H.B. and J & K has no credible evidence to support plaintiffs' claims as against these defendants. The plaintiffs have failed to prove their prima facie case. The preponderance of the evidence clearly shows that they have not.

The case against defendants Wu, H.B. and J & K should therefore be dismissed.


Dated: October 9, 2019                    Respectfully submitted,

                                          /s/ Ricardo R. Morel                  .
                                          Ricardo R. Morel, Esq.
                                          Attorney for defendants Jenny Wu,
                                          H.B. Inc. and J & K Inc.